JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority ____
Send ____
Enter ____
Closed ____
JS-5/JS-6 ____
Scan Only ____

| | | |
|---|---|---|
| **CASE NO.:** | CV 15-04454 SJO (JEMx) | **DATE:** July 24, 2015 |
| **TITLE:** | Farid Malek et al. v. Blackmer Pump Company et al. | |

========================================================================
**PRESENT:** THE HONORABLE S. JAMES OTERO, UNITED STATES DISTRICT JUDGE

Victor Paul Cruz
Courtroom Clerk

Not Present
Court Reporter

**COUNSEL PRESENT FOR PLAINTIFFS:**

Not Present

**COUNSEL PRESENT FOR DEFENDANTS:**

Not Present

========================================================================
**PROCEEDINGS (in chambers): ORDER GRANTING PLAINTIFFS' MOTION TO REMAND** [Docket No. 65]; **DENYING ALL OTHER PENDING MOTIONS AS MOOT** [Docket Nos. 30, 31, 35, 39, 44, 67, 152]

This matter is before the Court on Plaintiffs Farid and Mary Malek's ("Plaintiffs") Motion to Remand ("Motion"), filed June 29, 2015. Defendants Chevron U.S.A., Inc., Texaco Inc., ExxonMobil Corporation, and ExxonMobil Oil Corporation (collectively, "Defendants") filed an Opposition on July 6, 2015, to which Plaintiffs filed a Reply on July 13, 2015. The Court found this matter suitable for disposition without oral argument and vacated the hearing set for July 27, 2015. *See* Fed. R. Civ. P. 78(b). For the reasons stated below, the Court **GRANTS** Plaintiffs' Motion to Remand.

I.   FACTUAL AND PROCEDURAL BACKGROUND

In the operative complaint, Plaintiffs allege that Plaintiff Farid Malek ("Mr. Malek") suffers from malignant mesothelioma. (First Am. Compl. ("FAC") ¶¶ 17, 35, ECF No.1-7.) According to Plaintiffs, Mr. Malek's permanent injuries, including his mesothelioma, were caused by the negligence of the aforementioned Defendants and other defendants named in the FAC. (*See, e.g.,* FAC ¶¶ 3-4, 14-15, 36.) Specifically, Plaintiffs allege that Mr. Malek was exposed to asbestos and asbestos-containing products and equipment during his work on the premises of the Abadan Oil Refinery (the "Refinery") from 1951 to 1979, and that his exposure to asbestos caused his mesothelioma. (*See, e.g.,* FAC ¶¶ 4-5, 14-15; *see also* FAC Ex. A.)

Plaintiffs filed the instant lawsuit in the Superior Court of California for the County of Los Angeles ("Superior Court"), on May 7, 2015, and amended their original complaint on May 20, 2015. (*See generally* Compl., ECF No. 1-2; FAC.) In the operative complaint, Plaintiffs seek damages from dozens of defendants on seven claims for: (1) professional negligence; (2) negligence; (3) strict liability; (4) premises owner/contractor liability; (5) negligent joint venture/single business enterprise; (6) alter ego liability; and (7) loss of consortium. (*See generally* FAC.) On June 12, 2015, Defendants removed the instant action to this Court based on the claim that the Court has

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

CASE NO.: **CV 15-04454 SJO (JEMx)**     DATE: **July 24, 2015**

subject matter jurisdiction under the federal officer removal statute, 28 U.S.C. § 1442(a)(1) ("§ 1442"). (*See generally* Notice of Removal ("Notice"), ECF No. 1.)

In the instant Motion, Plaintiffs seek to remand this action on the grounds that the federal officer removal statute does not apply. (*See generally* Mot., ECF No. 65.)[1]

II.     DISCUSSION

    A.     Legal Standard for Remand

"It is a fundamental precept that federal courts are courts of limited jurisdiction." *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). "A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *Stock W., Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989) (citation omitted). Lack of subject matter jurisdiction may be raised by any party at any time, and it is never waived. *See United States v. Cotton*, 535 U.S. 625, 630 (2002); *Miguel v. Country Funding Corp.*, 309 F.3d 1161, 1163-64 (9th Cir. 2002).

An action is removable to federal court only if it could have been brought there originally. *See* 28 U.S.C. § 1441(a). The Ninth Circuit has held that courts must "strictly construe the removal statute against removal jurisdiction" and reject federal jurisdiction "if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (citations omitted). "The strong presumption against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." *Id.* (citations and internal quotation marks omitted).

    B.     Defendants' Basis for Removal

As previously indicated, Defendants removed this case pursuant to § 1442, the federal officer removal statute. (*See generally* Notice.) Section 1442 permits removal of civil actions that are filed against or directed to:

> The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

---

[1] While parties have been engaged in concurrent motion practice, this Court addresses Plaintiffs' Motion to Remand first, as a lack of jurisdiction over this matter would render all other motions before this Court moot.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

CASE NO.: CV 15-04454 SJO (JEMx)      DATE: July 24, 2015

28 U.S.C. § 1442(a)(1). While Defendants do not purport to be federal agencies or officers (*see generally* Notice; Opp'n, ECF No. 93), a defendant that is not a federal agency or officer may properly remove an action under § 1442 when: (1) the defendant is a "person"; (2) there is a causal nexus between the plaintiff's claims and the defendant's actions made at the direction or "under color" of federal office; and (3) the defendant has raised a colorable defense based upon federal law. *See Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1251 (9th Cir. 2006) (citing *Mesa v. California*, 489 U.S. 121, 124-125, 129-135 (1989); *see also Jefferson Cnty., Ala. v. Acker*, 527 U.S. 423, 431 (1999)); *Fung v. Abex Corp.*, 816 F. Supp. 569, 571-72 (N.D. Cal. 1992).

     1.      <u>Personhood</u>

With regard to the first requirement that the defendant be a "person," Defendants are corporations, and courts that have considered this issue have held that corporations are "persons" for the purpose of Section 1442(a)(1). *See Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 398 (5th Cir. 1998); *Fung*, 816 F. Supp. at 572; *Blackman v. Asbestos Defendants (BHC)*, No. CV 97-03066 S, 1997 WL 703773, at *2 (N.D. Cal. Nov. 3, 1997). Further, Plaintiffs do not dispute that Defendants are persons under the statute. (Mot. 4.) The Court agrees that Defendants are persons for the purposes of § 1442 and considers each of the statute's remaining requirements below.

     2.      <u>Causal Nexus</u>

         a.      <u>Acting "Under Color of Federal Office"</u>

To demonstrate that Defendants were acting under the direction of a federal officer, they must show that a federal officer had "direct and detailed control" over their actions. *See Ballenger v. Agco Corp.*, No. CV 06-02271 CW, 2007 WL 1813821, at *3 (N.D. Cal. June 22, 2007) (quoting *Fung*, 816 F. Supp. at 572). This is because "removal by a 'person acting under' a federal officer must be predicated upon a showing that the acts . . . were performed pursuant to an officer's direct orders or to comprehensive and detailed regulations." *Ryan v. Dow Chem. Co.*, 781 F. Supp. 934, 947 (E.D.N.Y. 1992) (citing *Bakalis v. Crossland Sav. Bank*, 781 F.Supp. 140, 144-45 (E.D.N.Y. 1991)). Thus, if Defendants "establish[] 'only that the relevant acts occurred under the general auspices of' a federal officer," they are not entitled to remove under § 1442(a)(1). *See Fung*, 816 F. Supp. at 572 (citing *Ryan* 781 F. Supp. at 947); *Bakalis*, 781 F.Supp. at 144-45).

Defendants argue that pursuant to an agreement between themselves and the United States Government (the "Government" or "U.S. Government"), they were acting "under color" of the Executive Branch in their operation of the Refinery. (Opp'n 10-12.) More specifically, Defendants assert that the Executive Branch, under both Presidents Truman and Eisenhower, undertook

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:** <u>CV 15-04454 SJO (JEMx)</u>  **DATE:** <u>July 24, 2015</u>

"effort[s] to enlist the American companies[2] to 'assure the continued availability [to] the free world [of] the sources of petroleum in the Near East.'"  (Opp'n 4-5 (original formatting omitted); Ex. A ("U.S. Foreign Policy Report" or "Report") 65-66, ECF No. 93-2.)  In furtherance of this effort, President Eisenhower "'authorize[d] and directe[d] the Secretary of State' to inform the American oil companies[, including Defendants] 'of the proposed Iranian Consortium Plan' and of its importance to national defense."  (Opp'n 5; Report 68; Decl. of John C. Harper in Supp. of [Opp'n] ("Harper Decl.") ¶ 22, ECF No. 93-1.)  In 1954, "at the direct behest of the Executive Branch of the U.S. Government," and in spite of their initial refusal to deal in Iranian oil, the American oil companies entered into an agreement with the Iranian Government and National Iranian Oil Company to find, produce, and refine Iranian oil (the "Agreement").  (Opp'n 5-8; Harper Decl. ¶¶ 23-26.)  One of the corporations formed pursuant to the Agreement, of which the American oil companies were minority shareholders, was charged with the responsibility of operating the Refinery where Mr. Malek worked.  (Opp'n 7-8; Harper Decl. ¶¶ 28-29.)

Describing themselves as "'geopolitical 'instruments of foreign policy' in [the Government's] Cold War effort to prevent Iran from succumbing to Soviet Influence," Defendants insist that they negotiated the Agreement "on behalf of the U.S. Government."  (Opp'n 11; Harper Decl. ¶¶ 9-10.)  Defendants also argue that "the U.S. Government's control over [Defendants'] actions can be demonstrated by the 'strong government intervention' that directed [Defendants'] actions."  (Opp'n 11.)  In their Motion, Plaintiffs contend that Defendants can present no evidence that the Government directed Defendants' actions.  (Mot 5.)  For the following reasons, the Court agrees.

The 1975 U.S. Foreign Policy Report, frequently cited in Defendants' Opposition, indicates that officers of the U.S. Government "asked," "hoped to induce," and "invited" the American oil companies to participate in "an international consortium to contract with the government of Iran, for the production, refining and acquisition of petroleum." (Report 60-61, 67-68.)  The Report does not state, however, that any officer of the U.S. Government **directed**, or provided **detailed direction** regarding, the American oil companies' actions under the Agreement, including their operation of the Abadan Refinery.  *See Fung*, 816 F. Supp. at 572; *Ryan* 781 F. Supp. at 947; *Bakalis*, 781 F.Supp. at 144-45.

In his declaration, Defendant Chevron's chief historian and corporate archive manager, John C. Harper ("Harper"), states that the America oil companies "were acting under the direction of the Executive Branch of the U.S. Government . . . when they entered into [the] intense negotiations" that produced the Agreement. (Harper Decl. ¶¶ 1, 9, 13.)  Harper's declaration does not, however, indicate that the Executive Branch directed Defendants' conduct with relation to the Refinery during or after the negotiations.  (*See generally* Harper Decl.)

---

[2] Defendants, and for the purposes of this Order, the Court, use the term "American oil companies" to refer to Standard Oil Company of California, Texaco Inc., Gulf Oil Corporation, Standard Oil Company of New Jersey, and Socony-Vaccum Oil Company.  (Opp'n 1 n.1.)

Case 2:15-cv-04454-SJO-JEM Document 159 Filed 07/24/15 Page 5 of 7 Page ID #:3103

JS-6

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:** **CV 15-04454 SJO (JEMx)**         **DATE:** **July 24, 2015**

       b.      Causal Nexus Between Plaintiffs' Claims and Defendants' Actions Under Federal Direction

To satisfy the "causal nexus" prong, the defendant must "by direct averment[,] exclude the possibility that [his actions were] based on acts or conduct . . . not justified by his federal duty." *Mesa*, 489 U.S. at 132 (citation and quotation marks omitted). "The 'causal nexus' between a federal officer's directions and the private actor 'must be predicated on a showing that the acts forming the basis of the state suit were performed pursuant to an officer's 'direct orders or comprehensive and detailed regulations.'" *Cabalce v. VSE Corp.*, 922 F. Supp. 2d 1113, 1122 (D. Haw. 2013) (citations omitted). "Most courts have held that the federal officer must have direct and detailed control over the defendant." *Arness v. Boeing N. Am., Inc.*, 997 F. Supp. 1268, 1273 (C.D. Cal. 1998) (citation and internal quotation marks omitted). Thus, "if the corporation establishes only that the relevant acts occurred under the general auspices of federal direction then it is not entitled to § 1442(a)(1) removal." *Id.* (quoting *Good v. Armstrong World Industr., Inc.*, 914 F. Supp. 1125, 1128 (E.D. Penn. 1996)).

Here, Defendants argue that Plaintiffs' claims against them arise from the "government-negotiated terms" of the Agreement, and as such, the causal nexus prong is met. (Opp'n 12-13.) However, Defendants have failed to demonstrate that the terms of the Agreement were negotiated based on direct orders of the Government. Even if the Court accepts the Report's references to the Government "ask[ing]," "hop[ing] to induce," and "invit[ing]" the American oil companies to enter into the Agreement as indications of detailed direction, Defendants have not shown that they received **any** direction from Government officers while negotiating the terms of the Agreement. (*See generally* Mot., Opp'n.) Additionally, Defendants do not suggest that their allegedly negligent operation of the Abadan Refinery, which underlies Plaintiffs' claims, occurred under regulations, guidelines, or rules directed by the U.S. Government. At most, in making their "instruments of foreign policy" argument, Defendants maintain that they were acting "under general auspices of federal direction." *See Arness*, 997 F. Supp. at 1273. Therefore, Defendants have failed to show a sufficient causal nexus between Plaintiffs' claims and a federal officer's direction. *See id.*

*Durham* requires a defendant seeking to avail itself of § 1442(a)(1) to make a showing sufficient to satisfy all three criteria. 445 F.3d at 1251. However, in the interest of fully considering the parties' arguments, the Court examines whether Defendants have demonstrated that they have a colorable federal defense below.

      3.      The Political Question Doctrine as a Colorable Defense

Federal officer removal is proper only if the removing party alleges a "colorable" federal defense. *Mesa*, 489 U.S. at 129. To state a colorable defense, the removing defendant need not show that the defense is meritorious, but merely that there is a legitimate question of federal law to be decided regarding the validity of the defense. *Id.* at 133; *see also Willingham v. Morgan*, 395 U.S.

CASE NO.: <u>CV 15-04454 SJO (JEMx)</u>     DATE: <u>July 24, 2015</u>

402, 406-07 (1969). Defendants contend that the political question doctrine is a colorable federal defense to Plaintiffs' claims. (Opp'n 13-17.)

In order for the political question doctrine to constitute a colorable defense to support removal, the Court must find that "[a]llowing this action to proceed would necessarily require the judicial branch of our government to question the political branches' decision." *See Corrie v. Caterpillar, Inc.*, 503 F.3d 974, 982 (9th Cir. 2007). Defendants argue that Plaintiffs' claims against them are "inextricably bound to an inherently political question": the propriety of the Government providing politically-driven aid to Iran in the development of its oil assets. (*See, e.g.,* Opp'n 1, 11; Harper Decl. ¶¶ 9, 17-29.) By contrast, Plaintiffs, quoting *Bixby v. KBR, Inc.*, 748 F. Supp. 2d 1224, 1236 (D. Or. 2010), contend that "'the matter fundamentally at issue here is [D]efendants' performance [or non-performance] of its contractual obligation . . . rather than the advisability of any government policy-related decision.'" (Reply 5, ECF No. 115.)

> Plaintiffs' claims are based on Defendants' negligent failure to abide by the terms of [the Agreement]—not the [G]overnment's policy to broker the Consortium Agreement, or promote the extrapolation of Iranian oil. Indeed, Defendants have presented no evidence whatsoever that a policy of the United States government conflicted with their ability to use industry-standard safety protocols in their operation of Middle Eastern refineries.

(Reply 5.) The Court agrees. Overall, Defendants' brief contains no support for the conclusion that the Government: (1) directed Defendants to operate the Refinery in a manner that led to Mr. Malek's injuries; or (2) directed Defendants' to enter into the Agreement. (*See generally* Opp'n.) Thus, there is no reason for the Court to find that allowing this action to proceed would require the Court to question the Executive Branch's decision to **encourage** Defendants to enter into the Agreement. *See Corrie*, 503 F.3d at 982.

"Under the federal officer removal statute, suits against federal officers may be removed despite the nonfederal cast of the complaint; the federal-question element is met if the defense depends on federal law." *Acker*, 527 U.S. at 431. The Ninth Circuit has described the reasoning behind this policy as follows: "[i]f the federal government can[not] guarantee its agents access to a federal forum if they are sued or prosecuted, it may have difficulty finding anyone willing to act on its behalf." *Durham*, 445 F.3d at 1253; *see also Willingham*, 395 U.S. at 406-07 (explaining that allowing removal ensures that "where federal officers can raise a colorable defense arising out of their duty to enforce federal law . . . [they can] have such defenses litigated in the federal courts."). In the instant case, for the reasons described above, the Court has found that Defendants' alleged actions giving rise to Plaintiffs' claims were not directed by any federal officer or performed "under the color" of any U.S. Government office or officer. Accordingly, the political question doctrine is not a colorable defense available to Defendants.

    2.    <u>Conclusion</u>

JS-6

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:** <u>CV 15-04454 SJO (JEMx)</u>  **DATE:** <u>July 24, 2015</u>

Because Defendants have failed to satisfy both the "causal nexus" prong and the "colorable federal defense" prong, removal pursuant to 28 U.S.C. § 1442(a)(1) is improper.

III. <u>RULING</u>

For the foregoing reasons, Plaintiffs' Motion to Remand is **GRANTED**. Because this action is remanded to state court, all other pending motions are **DENIED AS MOOT**.

This matter shall close.

IT IS SO ORDERED.